## THE IOWA RAILROAD LAND COMPANY v. ADKINS.

38 351
118 458

1. **Public lands:** MISTAKE. Where the descriptions in an application at a United States Land Office to purchase public land, and in the duplicate receipt of the Receiver in the entry in the tract book, in the Receiver's receipt book, and in the record of certificates all correspond, the fact that the number of the application was written upon another tract on the plat in the Land Office is not evidence of a mistake entitling the plaintiff to relief in equity.

2. ———: COLOR OF TITLE. Under such circumstances, mere naked possession does not place the occupant in the position of a settler in good faith under color of title.

*Appeal from Greene District Court.*

MONDAY, JUNE 8.

THIS action was brought by the plaintiff to recover a tract of forty acres of land from the possession of defendant. The defendant filed a cross-bill, setting up an equitable title in the land, and asked the court to quiet the legal title in him. The cause was tried in equity on the defendant's cross-bill, and a decree rendered, quieting the title to the land in the defendant. Plaintiff appeals. The facts of the case appear in the opinion.

*I. N. Kidder, Isaac Cook* and *N. M. Hubbard,* for appellant.

*Hull & Ramsey,* for appellee.

MILLER, CH. J.—The land in dispute was claimed and selected by the Cedar Rapids & Missouri River Railroad Company, under the grant of lands to that company by Congress,

as contained in the act of June 2d, 1864. (See 13 U. S. Statutes at Large, 95). It was duly certified to the railroad company by the Secretary of the Interior, as a part of said grant, on the 20th day of April, 1869, and was conveyed by the company to the plaintiff by deed, made September 15th, 1869. So that the plaintiff is the holder of the legal title to the land, and that such legal title must prevail unless the defendant has established an equity paramount thereto.

The land in dispute is "the south-east quarter of the north-*east* quarter of sec. 6, tp. 82, range 29." On the 9th day of March, 1855, Alford Luce made application at the United States land office at Des Moines, together with the usual agreement in writing, to purchase of the United States "the north-west quarter of the south-east quarter, and the south-east quarter of the north-*west* quarter of sec. 6, tp. 82, R. 29." Previous to this time, B. F. Allen had entered the forty acre tract last above described. It is claimed by defendant that in making said application said Luce *intended* to purchase the land in dispute, viz: the south-east of the north-*east* quarter, instead of the south-east of the north-*west* quarter which had been previously entered by B. F. Allen, and it is claimed that said Luce did in fact apply to purchase the land in controversy, and that by mistake the written application omitted to describe it, but described other land.

We do not stop to discuss the power of courts of equity to relieve against mistakes, nor under what circumstances such power will be exercised, but conceding that defendant would be entitled to the relief prayed, if the proof supported the averments of the cross-bill as to the fact of mistake, we are very clear that there is no such evidence of the alleged mistake as will warrant a court of equity to overturn the legal title to lands held by the other party.

As we have seen, the application made and the agreement entered into by Luce to purchase from the United States 1. PUBLIC land: plainly described the south-east quarter of the mistake. north-*west* quarter. The duplicate receipt of the Receiver, the entry in the tract book, Receiver's receipt book, record of certificates, all correspond with the description of the

land contained in Luce's application and agreement. The application was numbered 29,169, and this number was written on the plat in the land office upon the tract in dispute.

There is no evidence showing when, where or by whom these numbers were placed thus on the plat. Owing to the conflict between Luce's and Allen's entry no patent ever issued to Luce for the land described in his application. To our minds there is an entire absence of evidence to show that there was a mistake in the application of Alford Luce. On the contrary it seems clear that whoever placed the number of the application on the plat of the tract in dispute must have done so by mistake, if done by any one having authority to make the entry. At all events, this mere fact that these figures are found placed upon the plat on the land in question, cannot have the effect to overthrow all the other evidence as to the identity of the tract applied for by the enteror, Luce—evidence of a solemn character required by law and the regulations of the land department of the governmant to be made, upon the application of an individual to purchase any portion of the public lands.

Luce never took possession of the land in controversy. He, through his attorney in fact, A. J. Stevens, deeded it to Lewis Adkins, father of defendant, August 6th, 1857, who executed a deed purporting to convey the land to the plaintiff, February 5th, 1860, and he, it seems, took possession thereof in 1858, being at the time a resident on adjoining land. We are unable, therefore, to gather anything from the possession of the land throwing any light upon the question of the alleged mistake.

We are forced to the conclusion that Luce, through whom the defendant claims, did not apply to enter the land in controversy at all. That there was no mistake in the description of the lands he did apply to purchase, and that he never acquired any right or title thereto.

II. It is urged, however, by counsel for appellee that the plaintiff's grantor, through its agent, had notice of the claim of the defendant at the time of selecting the land as belonging to the railroad grant. This may be conceded, and yet we cannot see how such notice would affect the plaintiff's rights.

The act of Congress of June 2d, 1864, under which plaintiff claims the land in dispute, in the 4th section, directs the Secretary of the Interior to reserve and cause to be certified and conveyed to the Cedar Rapids & Missouri River Railroad Company * * * * . * "out of any public lands now belonging to the United States, not sold, reserved, or otherwise disposed of, or to which a pre-emption right, or right of homestead settlement has not attached, and on which a *bona fide* settlement and improvement has not been made, under color of title derived from the United States or from the State of Iowa, within fifteen miles of the original main line, an amount of land," &c. Further on in the same section it is provided, "that no lands shall be conveyed to any company or party whatsoever, under the provisions of this act" etc., "which has been settled upon and improved in good faith by a *bona fide* inhabitant under color of title derived from the United States or from the State of Iowa adverse to the grant made by this act or the act to which this is an amendment."

It is under these provisions of the act of Congress that defendant insists that his claim to the land in dispute is protected. We are unable to come to the conclusion that his claim is well founded. The defendant cannot claim to hold the land because of any pre-emption or homestead right, in him or any of those under whom he claims. Neither of them ever made any such claim or took any of the steps necessary to found such a claim and, as we have seen, no effort was made by Luce, from whom defendant claims, to purchase the land in controversy from the United States. He did apply to purchase other and different lands, but not this. It is not claimed that the defendant derives any title under the State of Iowa. Nor can it be said that defendant is in the position of one who has made a *bona fide* settlement and improvement under color of title derived from the United States, because neither he nor any of those under whom he claims had color of title to the land from the United States, for as we have seen, neither of them ever made any effort to procure a title thereto from the government.

The mere naked possession of the defendant was not pro-

tected by the provisions of the act of Congress above referred to. Hence the knowledge of such possession could in no manner affect the rights of the railroad company to whom the lands were conveyed by the Secretary of the Interior. Possession alone is not enough under the act of Congress; there should be some equity or right which is recognized therein and upon the existence of which the land would have been reserved from the operation of the grant.

2. ———: color of title.

The defendant's naked possession could not create any right adverse to the United States; nor could possession under claim of title create any right as against the grantee of the United States unless continued for such a length of time after the government parted with the title as to entitle the defendant to avail himself of the benefits of the statute of limitations. This has not been the case. The title remained in the United States until April 20th, 1869, when it was certified to the railroad company. This action was commenced a little over three years thereafter.

The decree of the District Court must be

REVERSED.